UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

Civil Action No. 17-15-HRW

JAMES MICHAEL BRUCE,     PLAINTIFF,

v.     **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,     DEFENDANT.

Plaintiff has brought this action pursuant to 42 U.S.C. §405(g) to challenge a final decision of the Defendant denying his application for disability insurance benefits. The Court having reviewed the record in this case and the dispositive motions filed by the parties, finds that the decision of the Administrative Law Judge is supported by substantial evidence and should be affirmed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his current application for disability insurance benefits in October 2015, alleging disability beginning in October 2014, due to "back injury, severe arthritis, PTSD with anxiety, TBI, bilateral sensorineural hearing loss, recurrent tinnitus, TMJ, allergic rhinitis, GERD, left shoulder surgery and right elbow surgery" (Tr. 199). This application was denied initially and on reconsideration. Thereafter, upon request by Plaintiff, an administrative hearing was conducted by Administrative Law Judge Anne Shaughnessy (hereinafter "ALJ"), wherein Plaintiff, accompanied by counsel, testified. At the hearing, Suman Srinivasan, a vocational expert (hereinafter "VE"), also testified.

At the hearing, pursuant to 20 C.F.R. § 416.920, the ALJ performed the following five-

step sequential analysis in order to determine whether the Plaintiff was disabled:

Step 1: If the claimant is performing substantial gainful work, he is not disabled.

Step 2: If the claimant is not performing substantial gainful work, his impairment(s) must be severe before he can be found to be disabled based upon the requirements in 20 C.F.R. § 416.920(b).

Step 3: If the claimant is not performing substantial gainful work and has a severe impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and his impairments (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is disabled without further inquiry.

Step 4: If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

Step 5: Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The ALJ issued a decision finding that Plaintiff was not disabled (Tr. 20-30). Plaintiff was 39 years old on the alleged date of onset. He has a high school education education (Tr. 201). His past relevant work experience consists of work as an infantryman and recruiter (Tr. 208).

At Step 1 of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 22).

The ALJ then determined, at Step 2, that Plaintiff suffers from facet arthritis of the lumbar spine and PTSD, which he found to be "severe" within the meaning of the Regulations (Tr. 22-23).

2

At Step 3, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments (Tr. 23-24).

The ALJ further found that Plaintiff could not return to his past relevant work (Tr. 28) but determined that he has the residual functional capacity ("RFC") to perform a range of light work with the following restrictions:

> He can climb ladders, ropes, and scaffolds occasionally. He should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards. He can understand and remember simple and detailed work procedures and instructions. He can tolerate coworkers and accept supervision in a generally object-focused context with infrequent and casual contacts with only occasional contact with the public. He would need a static work setting with infrequent changes.

(Tr. 24).

The ALJ finally concluded that these jobs exist in significant numbers in the national and regional economies, as identified by the VE (Tr. 29).

Accordingly, the ALJ found Plaintiff not to be disabled at Step 5 of the sequential evaluation process.

The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the final decision of the Commissioner. Plaintiff thereafter filed this civil action seeking a reversal of the Commissioner's decision. Both parties have filed Motions for Summary Judgment and this matter is ripe for decision.

## II. ANALYSIS

### A. Standard of Review

The essential issue on appeal to this Court is whether the ALJ's decision is supported by

substantial evidence. "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). "The court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." *Bradley v. Secretary of Health and Human Services*, 862 F.2d 1224, 1228 (6th Cir. 1988). Finally, this Court must defer to the Commissioner's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997).

**B.     Plaintiff's Contentions on Appeal**

Plaintiff alleges several claims of error:

(1)     the ALJ failed to identify obesity as a severe impairment at Step Two and to consider it at all stages of the sequential evaluation;

(2)     the ALJ failed to adequately account for Plaintiff's moderate limitation in concentration, persistence, or pace;

(3)     the ALJ failed to properly evaluate the medical opinions in the record;

(4)     the ALJ improperly discounted the VA rating of disability;

(5)     the ALJ erred in evaluating Plaintiff's credibility and symptom severity; and

(6)     the hypothetical question to the VE was flawed.

4

## C. Analysis of Contentions on Appeal

Plaintiff's first claim of error is that the ALJ failed to identify obesity as a severe impairment at Step Two and to consider it at all stages of the sequential evaluation. At the hearing, Plaintiff testified that he stood 6'1' and weighed 202 pounds (Tr. 40). However, according to the pertinent Social Security guidelines, he is **not** "obese." As Social Security Ruling (SSR) 02-01p notes, "National Institutes of Health (NIH) established medical criteria for the diagnosis of obesity . . . . For adults, both men and women, the Clinical Guidelines describe a BMI [body mass index] of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'" 2002 WL 34686281, at *2.

Plaintiff never had a BMI of 30 or above (Tr. 289 (October 2014: 26.47), Tr. 286 (February 2015: 28.1), 558 (December 2015 (26.4), 590 (January 2016: 27), 589 (March 2016: 27), 674 (September 2016: 27)). Thus, while Plaintiff was overweight, he was not obese per the applicable Regulations.

Notwithstanding the BMI score which puts him outside of the definition of "obese," there is no evidence in the record that his weight affected his ability to work. In fact, in his notes from an examination of Plaintiff in February 2016, Benjamin Risner, M.D. observed "the claimant's weight did **not** affect his ability to ambulate, sit, and stand, nor breathing/fatigue." (Tr. 584).

The Court finds Plaintiff's allegation of error with regard to obesity to be without merit.

Plaintiff's second claim of error is that the ALJ failed to adequately account for Plaintiff's moderate limitation in concentration, persistence, or pace. In faulting the ALJ's analysis of these factors, Plaintiff relies upon cases outside of the Sixth Circuit, specifically, the Eastern District of

Pennsylvania as well the Fourth and Seventh Circuits, which appear to stand for the proposition that a limitation to simple or unskilled work does not account for a moderate limitation in concentration, persistence, or pace. However, as Defendant points out, without our circuit, courts have emphasized the need for a case-by-case analysis when assessing whether a limitation to unskilled work adequately accounts for a concentration/persistence/pace deficiency. *Bickerstaff v. Comm'r of Soc. Sec.*, No. 2:15-CV-10917, 2016 WL 4182756, at *12 (E.D. Mich. July 15, 2016), *report and recommendation adopted*, No. 15-10917, 2016 WL 4158383 (E.D. Mich. Aug. 5, 2016) (unpublished) (distinguishing *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005), which Plaintiff cites). Other districts in this Circuit have also rejected the argument that a limitation "to 'simple work' is somehow legally deficient." *Hycoop v. Comm'r of Soc. Sec.*, No. 1:15-CV-795, 2016 WL 4500794, at *3 (W.D. Mich. Aug. 29, 2016) (unpublished).

Here, the jobs the ALJ relied on at step five were unskilled jobs (Tr. 29). Unskilled jobs by definition involve only understanding, remembering, and carrying out simple tasks and would account for a moderate limitation in concentration/persistence/pace. SSR 96-9p, 1996 WL 374185, at *9. Other than arguing semantics, Plaintiff has no offered any evidence that he is more limited than what is reflected in the RFC.

Plaintiff's third claim of error is that the ALJ failed to properly evaluate the opinions of the medical sources in the record. The opinions at issue are those of consultative examiners Geoff Schwerzler, Psy.D and Benjamin Risner, M.D. and reviewing physicians, Ed Ross, PH.D., Paul Ebben Psy.D. and Robert Brown, M.D.

"In order to determine whether the ALJ acted properly in disagreeing with a medical

6

source, we must first determine the medical source's classification," *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010), as "not all medical sources need be treated equally," *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007). The Social Security regulations classify "acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Id.* at 875. Generally, more weight is given to the medical "opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1); *see also Norris v. Comm'r of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir.2012) (noting that a nonexamining source's opinion is given less deference than an examining (but not treating) source's opinion, which is given less deference than a treating source). But "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. One such instance is where the "[s]tate agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 404.1527(c)(3). Generally, more weight is given to opinions that are "more consistent ... with the record as a whole," *id.* § 404.1527(c)(4), and opinions of "a specialist about medical issues related to his or her area of specialty." *Id.* § 404.1527(c)(5).

In January 2016, Plaintiff underwent a consultative psychological examination by Geoff

7

Schwerzler, Psy.D. (Tr. 525-30). Plaintiff reported a TBI and PTSD from his time in the Army and claimed he had received therapy and psychiatric treatment between 2012 and 2015, but was not in therapy at the time of Dr. Schwerzler's examination (Tr. 526). Dr. Schwerzler noted that Plaintiff's thoughts were clear and coherent, but he exhibited hypervigilance, shaking, and biting nails (Tr. 528). His judgment was adequate, concentration and attention were average, and working memory was average, but immediate memory was below average (Tr. 528-29). Dr. Schwerzler diagnosed PTSD (Tr. 529). He opined that Plaintiff could understand, remember, and follow simple instructions, but would have a more difficult time with complex instructions (Tr. 529). Despite exam findings showing average attention and concentration (Tr. 528), Dr. Schwerzler opined Plaintiff had impaired attention and concentration that would likely interfere with functioning (Tr. 529). He also opined that Plaintiff would be severely limited in adapting and responding to stress and responding to pressure in a normal work setting (Tr. 529).

In February 2016, Benjamin Risner, M.D., examined Plaintiff (Tr. 583). Plaintiff reported low back pain, PTSD, and a TBI (Tr. 583). Dr. Risner noted that Plaintiff's gait was normal, he had full 5/5 strength in all muscle groups, had no tenderness, had full range of motion, and was able to stand and walk without difficulty (Tr. 584). He opined that Plaintiff "should be able to lift, sit, stand, bend, carry, and ambulate without difficulty" (Tr. 584).

After the consultative examinations, Ed Ross, Ph.D., reviewed the record and opined that Plaintiff could understand and recall simple and detailed instructions, maintain attention for two hours, tolerate coworkers and supervision in an object-focused context, and have infrequent and casual contact with the general public (Tr. 71). Paul Ebben, Psy.D., agreed with Dr. Ross's opinion (Tr. 91-92). Robert Brown, M.D., reviewed the record and opined that Plaintiff had

physical abilities consistent with medium work (Tr. 87-89). *See* 20 C.F.R. § 404.1567 ( c).

Plaintiff argues that the ALJ's decision is inconsistent with Dr. Schwerzler's opinion because he found that Plaintiff's attention and concentration were impaired and would likely interfere with functioning.

The Court disagrees with Plaintiff's interpretation of Dr. Schwerzler's opinion. To be sure, Dr. Schwerzler specifically noted that Plaintiff's "[c]oncentration and attention appeared average" (Tr. 529). Dr. Schwerzler appears to have accounted for any attention and concentration deficit by finding Plaintiff capable of only simple work, rather than complex work (Tr. 529). Indeed, Dr. Ross interpreted Dr. Schwerzler's opinion that way. (Tr. 66 and 71).

Plaintiff also argues that the ALJ erred in discounting the opinions of Dr. Risner and Dr. Brown, a reviewing physician. However, the ALJ gave Plaintiff the benefit of the doubt and found ***more*** limitations than either doctor identified. Dr. Risner opined Plaintiff would have no difficulty lifting, standing, sitting, bending, carrying, or walking (Tr. 584). Dr. Brown opined Plaintiff could perform medium work (Tr. 87-89). But the ALJ found Plaintiff was capable of only light work based on the significantly abnormal MRI findings (Tr. 24, 27). Indeed, not adopting the state agency reviewers' opinions in their entire but giving Plaintiff the benefit of the doubt based on is testimony, is an approach that **favors** Plaintiff and does not support reversal or remand. *See Kaplun v. Comm'r of Soc. Sec.*, No. 2:14-CV-0439, 2015 WL 736475, at *6 (S.D. Ohio Feb. 20, 2015), *report and recommendation adopted*, 2015 WL 1954453 ("[A]ny error in not adopting the state agency reviewers' opinions in their entirety—as opposed to the ALJ's approach of according them significant weight but giving Plaintiff the benefit of the doubt based on is testimony—would be harmless, since that approach is also more favorable to the

9

Plaintiff.").

Plaintiff also argues that the ALJ should have adopted the November 2015 determination of disability by the Veteran's Administration (Tr. 164-167). However, the ALJ was not required to accept the disability rating made by the Veterans Administration. The Social Security disability rules are clear:

> A decision by any ... other governmental agency about whether you are disabled ... is based upon its rules and is not our decision about whether you are disabled....
>
> We must make a disability ... determination based on social security law. Therefore, a determination made by another agency that you are disabled ... is not binding on us.

20 C.F.R. § 404.1504.

A disability rating from the Veterans Administration is entitled to consideration, but we have not specified the weight such a determination should carry when determining social security disability eligibility. *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir.1984).

Notably and relevant to the weight an ALJ should give a VA rating, "[c]laimants under the Social Security Act are subject to a more rigorous standard than those under the Veteran's Administration, and thus the VA's rating decision is not necessarily controlling." *Paul v. Astrue*, 827 F. Supp. 2d 739, 743 (E.D. Ky. 2011).

In this case, the record reflects that the ALJ gave consideration to the Veterans Administration disability determination: "[l]ittle weight is given to the VA decision to find claimant 100% disabled. Different agencies have different definitions of disability" (Tr. 27).

Although not citing the Social Security Regulations, the ALJ stated a proper understanding of the law that she is not bound by the VA's finding.

The ALJ also referred to notes from an Army psychologist (Tr. 25). The notes state that there was "no mention of PTSD diagnosis" and "no AHLTA [Armed Forces Longitudinal Technology Application] and/or VA records supporting and/or confirming [a traumatic incident], being diagnosed with PTSD and/or receiving treatment for PTSD" (Tr. 436). The Army psychologist also noted that Plaintiff's anxiety symptoms "responded well to treatment" and that Plaintiff reported "treatment has lessened his anxiety" (Tr. 436). Finally, with regard to a traumatic brain injury, the Army psychologist noted that a neuropsychologist observed that, while Plaintiff probably had multiple mild head injuries, he had recovered (Tr. 436). There was no record of Plaintiff needing treatment and his commander did "not report problems with memory loss, headaches, and/or irritability" (Tr. 436).

The ALJ also specifically stated she gave "some weight" to assessment of a military physician's January 2015 assessment of certain exertional limitations (Tr. 27).

The Court finds no error in the ALJ's consideration of the VA's determination. She did not ignore the VA determination. Moreover, given the differing standards of review and the notes in the record, it was reasonable for the ALJ to not adopt the VA's determination.

Plaintiff also argues that the ALJ erred in evaluating Plaintiff's credibility and symptom severity.

It is well established that as the "ALJ has the opportunity to observe the demeanor of a witness, (her) conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Hardaway v. Secretary of Health and Human Services*, 823 F.2d 922,

11

928 (6th Cir. 1987). Subjective claims of disabling conditions must be supported by objective medical evidence. *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 852-853 (6th Cir. 1986).

Plaintiff contends that the ALJ failed to take into account his claim that his medication cause sleepiness and drowsiness. However, the ALJ explicitly referred to his testimony in this regard (Tr. 25). There is very little in the record to support Plaintiff's complaints of sleepiness due to medication and how this may affect his ability to perform work-related activity. Rather, there is evidence in the record that Plaintiff was sleepy because he was noncompliant with his sleep apnea treatment (Tr. 602) even after he was prescribed a new CPAP mask (Tr. 679).

Plaintiff also asserts that the ALJ did not properly assess his "persistent attempt to treat his pain" (Pl. Memo. at 13). To the contrary, the ALJ noted that Plaintiff was trying very little to relieve his symptoms: "the medical record indicates that the claimant was essentially normal on examination in 2016, that he had never undergone musculoskeletal surgery, and that he is receiving no treatment from a mental health professional" (Tr. 28). Again, the ALJ considered Plaintiff's subjective complaints and weighed them against the evidence in the record. The Court finds no error in the ALJ's consideration of Plaintiff's credibility.

Finally, Plaintiff complains that the ALJ did not give enough credit to the fact that he had an excellent work history (Tr. 25). But as Plaintiff concedes, the ALJ recognized this (Tr. 25), but had to weigh this factor against the medical evidence and Plaintiff's limited treatment. This was the ALJ's job as the finder of fact. *Perales*, 402 U.S. at 399 ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

Finally, Plaintiff maintains that the hypothetical question to the VE was flawed. However, the Court finds that it accurately portrayed the claimant's abilities and limitations, as required by *Varley v. Secretary of Health and Human Services*, 820 F.2d 777 (6th Cir. 1987) and its progeny. This rule is necessarily tempered by the requirement that the ALJ incorporate only those limitations which he or she finds to be credible. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Based upon the credible medical evidence in the record and evaluation of claimant's daily activities, the ALJ crafted a hypothetical which accurately contemplated the same. In response to the ALJ's hypothetical, the VE cited to a significant number of jobs the hypothetical individual could perform. The VE's responsive testimony provided substantial evidence to support the ALJ's decision that claimant was not disabled.

### III. CONCLUSION

The Court finds that the ALJ's decision is supported by substantial evidence on the record. Accordingly, it is **HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment be **OVERRULED** and the Defendant's Motion for Summary Judgment be **SUSTAINED**. A judgment in favor of the Defendant will be entered contemporaneously herewith.

This 20th day of February, 2018.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge